UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, and CHARLES A. WHOBREY, *as Trustee* <br> Plaintiffs <br><br> v. <br><br> ALAN MCCLAIN, *in his official capacity as Insurance Commissioner of Arkansas*; and the ARKANSAS INSURANCE DEPARTMENT <br> Defendants | No. 25 CV 3938 <br><br> Judge Jeremy C. Daniel |

**ORDER**

The defendants' motion to dismiss [13] is granted. Civil case terminated.

**STATEMENT**

This is a declaratory judgment action seeking, among other things, a declaration that Arkansas Insurance Department Rule 128: Fair and Reasonable Pharmacy Reimbursements ("Rule 128" or the "Rule") is pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. (R. 1).[1] The plaintiffs, Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") and Charles A. Whobrey are a "self-funded, multiemployer employee welfare benefit plan governed by ERISA" and a "trustee and 'fiduciary' of the Fund as that term is defined in ERISA," respectively. (*Id.* ¶¶ 4, 6.) Defendant Alan McClain is the Insurance Commissioner for Arkansas, and the Arkansas Insurance Department ("AID") "is a department of the government of the State of Arkansas." (*Id.* ¶¶ 8–9.)

Rule 128 was issued on December 20, 2024. (*Id.* ¶ 34; *see also* R. 1-1.)[2] The Rule "broadly applies to all health benefit plans as defined in Ark. Code Ann. § 23-92-

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] "Documents attached to the complaint are considered part of the complaint." *In re McDonald's French Fry Litig.*, 503 F. Supp. 2d 953, 955 (N.D. Ill. 2007); *see also* Fed. R. Civ. P. 10(c).

503(2) and healthcare payors as defined in Ark. Code. Ann. § 23-92-503(3)." (R. 1 ¶ 36.) As defined by statute, a "health benefit plan" is "any individual, blanket or group plan, policy, or contract for healthcare services issued or delivered by a healthcare payor to residents of [Arkansas]," while a "healthcare payor" is an "entity that provides or administers a self-funded health benefit plan, including a governmental plan." (*Id.* (citations and quotations omitted).) The Rule allows the Commissioner to review the compensation program of Pharmacy Benefit Managers ("PBMs") "from a health benefit plan to ensure that the reimbursement for pharmacist services paid to a pharmacist or pharmacy is 'fair and reasonable.'" (*Id.* ¶ 37.) PBMs are those who "contract with health plans and insurers to manage their prescription-drug benefits." (*Id.* ¶ 15.)

The plaintiffs allege that "in furtherance of its purpose, Rule 128 includes a reporting obligation that requires health benefit plans to submit to the Commissioner certain pharmacy compensation information[.]" (*Id.* ¶ 38.) This information is used to "confirm whether such payments to Arkansas pharmacists and pharmacies are fair and reasonable[.]" (*Id.*) This is referred to as the "Reporting Requirement." (*Id.*) "If the Commissioner determines that the pharmacy compensation program of a reporting health benefit plan is not fair and reasonable . . . the Commissioner can require the [ ] plan to pay an additional pharmacy dispensing cost to ensure that the [ ] plan offers an adequate network of pharmacy providers[.]" (*Id.* ¶ 39.) This is referred to as the "Dispensing Fee Requirement." (*Id.*) According to the complaint, "[i]f the Commissioner determines the data provided by the health benefit plan is 'fair and reasonable,' then no further action or adjustment is needed." (*Id.*)

In addition, "[t]o implement Rule 128, the Commissioner issued AID Bulletin #18-2024[.]" (*Id.* ¶ 40; *see also* R. 1-2.) The Bulletin lays out the parameters of the Reporting Requirement. (R. 1 ¶ 42.) It also provides that, as related to the Dispensing Fee Requirement, the "Commissioner shall review a health plan's data and determine whether a health plan's pharmacy compensation program is already adequate to ensure an adequate pharmacy network or whether a . . . plan shall be required to pay an additional dispensing cost . . . to achieve a fair and reasonable pharmacy compensation program[.]" (*Id.* ¶ 44.)

The plaintiffs assert that Rule 128 is pre-empted by ERISA. (*See, e.g., id.* ¶¶ 54–56.) The defendants move to dismiss on the basis that Rule 128 is not pre-empted by ERISA. (R. 13.) They do so under Federal Rule of Civil Procedure 12(b)(6).[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] The defendants also move to dismiss this action as against AID, arguing that it is entitled to immunity pursuant to the Eleventh Amendment. (R. 14 at 2–3.) The plaintiffs concede this point. (R. 19 at 2, n. 1.) As such, the claims against AID are dismissed without prejudice. *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022) (courts without subject matter jurisdiction cannot dismiss cases with prejudice and therefore Eleventh Amendment immunity dismissal is without prejudice).

accepted as true, to state a claim to relief that is plausible on its face." *Calderon-Ramirez v. McCarment*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "draw[s] all reasonable inferences in [the plaintiff's] favor." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citations omitted). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not decide the merits." *Triad Assocs. Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). That said, the Court will not accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

ERISA's pre-emption clause applies to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). There are two categories of state law that ERISA pre-empts. "First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). This applies "'[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation[.]" *Id.* at 319–20 (quoting *Ca. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). "Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Id.* (quoting *Engelhoff v. Engelhoff*, 532 U.S. 141, 148 (2001)). The plaintiffs rely on both forms of pre-emption; the Court considers each.

## I. REFERENCE TO PRE-EMPTION

The plaintiffs first argue that the Reporting Requirement and Dispensing Fee Requirement refer to ERISA plans because they "impose requirements directly on ERISA plans rather than simply regulating PBMs." (R. 19 at 8.) As the defendants point out, this "theory of preemption . . . did not appear in [the plaintiffs'] complaint." (R. 22 at 1–2.) But "because a complaint need not articulate any legal theories, a plaintiff may oppose a motion to dismiss by invoking a legal theory that does not appear in the complaint." *Henrichs v. Ill. Law Enf't Training and Standards Board*, 306 F. Supp. 3d 1049, 1058 (citing *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)).

Rule 128 does not "immediately and exclusively [act] upon ERISA plans[.]" *Gobeille*, 577 U.S. at 319–20. The plaintiffs acknowledge that Rule 128 "broadly applies to all health benefit plans . . . and healthcare payors[.]" (R. 1 ¶ 36.) Specifically, the text of Rule 128 states that it "applies to all health benefit plans as defined in Ark. Code Ann. § 23-92-503(2) and healthcare payors as defined in Ark. Code. Ann. § 23-92-503(3)." (R. 1-1 at 3.) A plain reading of this statutory language suggests that these benefit plans "need not necessarily be ERISA plans." *See Dillingham*, 519 U.S. at 325–26 (finding that who may provide approved apprentices in an apprenticeship program was broader than ERISA plans). Further, Rule 128 appears to function

3

"irrespective of . . . the existence of an ERISA plan." *Id.* at 328 (citations and quotations omitted). Under Rule 128, a "health benefit plan" is "any individual, blanket, or group plan, policy or contract for healthcare services issued or delivered by a healthcare payor to residents of this state." Ark. Code. Ann. § 23-92-503(2). And a healthcare payor is a health insurance company, a health maintenance organization, a hospital and medical services corporation, or "an entity that provides or administers a self-funded health benefit plan, including a governmental plan." Ark. Code. Ann. § 23-92-503(3)(A)-(D). The Rule thus regulates health benefit plans and payors "whether or not the plans . . . fall within ERISA's coverage." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 89 (2020). While the plaintiffs allege that "[the d]efendants intend to apply Rule 128's Reporting and Dispensing Fee Requirements to health plans that are governed by ERISA," (R. 1 ¶ 47), the allegation that this is a broad reaching Rule, as well as the text of the Rule itself attached to the complaint, counteracts this fact. This matters because in the Seventh Circuit, "when a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint." *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004). The plaintiffs did not plead that Rule 128 exclusively acts on ERISA plans, nor is the existence of an ERISA plan essential to the Rule's operation.

## II. IMPERMISSIBLE CONNECTION PRE-EMPTION

That leaves the second form of ERISA pre-emption, where a state law has an impermissible connection with the federal statute. As mentioned, the plaintiffs allege that both Rule 128's Reporting Requirement and Dispensing Requirement "ha[ve] an impermissible connection with ERISA health plans." (R. 1 ¶¶ 55–56.) The Court considers each requirement in turn.

### A. Reporting Requirement

According to the plaintiffs, the Reporting Requirement is pre-empted "because it governs a central matter of plan administration." (R. 19 at 8.) The defendants counter that the Reporting Requirement is not central, but rather an incidental component of Rule 128. (R. 14 at 7–8; R. 22 at 3–5.)

To support their respective positions, the plaintiffs rely on *Gobeille*, while the defendants point to the Sixth Circuit's decision in *Self-Ins. Inst. of America, Inc. v. Snyder*, 827 F.3d 549 (6th Cir. 2016), a case decided shortly after *Gobeille*. In *Gobeille*, the Supreme Court analyzed a Vermont state law that required "health insurers, health care providers, health care facilities, and governmental agencies to report any 'information relating to health care costs, prices, quality, utilization, or resources required' by the state agency, including data relating to health insurance claims and enrollment." 577 U.S. at 315–16 (quoting Vt. Stat. Ann. Tit. 18, § 9410(c)(3)). The purpose of this data collection was to create a database that "must be 'available as a resource to insurers, employers, providers, purchasers of health care, and State

4

agencies to continuously review health care utilization, expenditures, and performance in Vermont.'" *Id.* at 316 (quoting § 9410(h)(3)(B)). In deciding whether ERISA preempted this Vermont regulation, the Supreme Court detailed how "ERISA's reporting, disclosure, and recordkeeping requirements for welfare benefit plans [were] extensive." *Id.* at 321. The Court concluded that "reporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Id.* at 323. As a result, the Court found that because "reporting is a principal and essential feature of ERISA . . . Congress intended to pre-empt state reporting laws like Vermont's[.]" *Id.* at 325. But the Court did not foreclose the possibility that a state law, "such as a tax on hospitals, the enforcement of which necessitates incidental reporting by ERISA plans" may be different. *Id.* (citing *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806 (1997)).

Four months later, the Sixth Circuit analyzed *Gobeille* in *Snyder*. The Sixth Circuit explored the Supreme Court's acknowledgement that a state law requiring incidental reporting may require a different pre-emption analysis. *Snyder*, 827 F.3d at 556–57. According to the Sixth Circuit, *Gobeille's* citation to *De Buono* supported the notion that incidental reporting was not pre-empted; the statute at issue in that case required hospitals to submit reports on a "cash basis of actual gross receipts received from all patient care services." *Id.* at 557 (citations and quotations omitted). The *Snyder* Court also noted that in *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), the Supreme Court upheld a New York state law that required reports to be submitted to the commissioner "to assess the cost, quality, and health system needs for medical education provided." *Id.* (citations and quotations omitted). While the Sixth Circuit recognized that these cases "did not explicitly concern reporting requirements . . . those requirements were essential to parts of the [ ] schemes and drew no comment from the Court." *Id.* Therefore, the Sixth Circuit concluded, "state laws imposing incidental burdens may need to be evaluated under the principles established by *De Buono* and *Travelers*." *Id.*

In the defendants' view, Rule 128 is like the law at issue in *Snyder*; "Rule 128 does not mandate reporting for its own sake. Instead, it requires reporting to facilitate its regulation of dispensing fees." (R. 14 at 8.) The plaintiffs argue that *Gobeille* is "directly on-point." (R. 19 at 9.) To them, Rule 128 is "first and foremost a reporting requirement with the possibility of assessment of an additional dispensing fee that must be paid to pharmacies." (*Id.* at 11.)

Ultimately, this dispute boils down to the following question: is Rule 128 a dispensing rule, or a reporting rule? The Rule itself states that its intended purpose is to "ensure that the reimbursement for pharmacist services paid to a pharmacist or pharmacy is fair and reasonable to provide an adequate pharmacy benefits manager network for a health benefit plan." (R. 1-1 at 2; R. 1 ¶ 37.) The Rule also was "specifically issued related to cost processes, and not plan benefit design, to help ensure the subject of network adequacy or reasonably sustainable network adequacy of pharmacy services

5

for health benefit plans." (R. 1-1 at 2.) As mentioned, where an attached document "contradicts a complaint . . . the document's facts or allegations trump those in the complaint." *Flannery*, 354 F.3d at 638. The plaintiffs' complaint alleges that "Rule 128 governs 'plan reporting, disclosure, and – by necessary implication – recordkeeping. These matters are fundamental components of ERISA's regulation of plan administration.'" (R. 1 ¶ 55 (quoting *Gobeille*, 577 U.S. at 323).) But the plaintiffs also allege in their complaint that "[i]n furtherance of [Rule 128's] purpose, Rule 128 includes a reporting obligation[.]" (R. 1 ¶ 38.) As mentioned, the Rule's stated purpose is to ensure reimbursement for pharmacist services; unlike the rule in Vermont, it is not a reporting law. *See Gobeille*, 577 U.S. at 325 (classifying Vermont law as a "pre-empt state reporting law[]"). The plaintiffs have alleged that the Reporting Requirement is to further that purpose—*i.e.*, is incidental to that purpose. That allegation, along with the Rule itself, contradicts the allegation that the Rule impedes on ERISA plan administration. Thus, the plaintiffs have failed to sufficiently allege that the Rule's Reporting Requirement is pre-empted by ERISA.

### B. Dispensing Requirement

The defendants also argue that the Dispensing Fee Requirement is not pre-empted. (R. 14 at 5.) Relying on the Supreme Court's decision in *Rutledge*, the defendants assert that Rule 128 is "virtually indistinguishable from the rate regulation" at issue there; "the only difference is that where the statute there regulated the rates Arkansas pharmacies were reimbursed for selling plan beneficiaries a drug, the [R]ule here regulates the fees Arkansas pharmacies are paid for dispensing plan beneficiaries a drug." (*Id.* at 6.) In the plaintiffs' view, the Dispensing Fee Requirement is pre-empted because "it dictates plan design by regulating the [plaintiffs'] pharmacy network and restricting the [plaintiffs' ability to structure how it provides prescription drug benefits to its participants and beneficiaries." (R. 19 at 12.) Specifically, the "Dispensing Fee Requirement eliminates [the pharmacy's ability to choose whether to join a network at a specific rate] by forcing ERISA plans to pay a specified dispensing fee." (*Id.*)

In *Rutledge*, the Supreme Court considered Arkansas' Act 900, which "requires PBMs to reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler." 592 U.S. at 84. In finding that Act 900 did not have an impermissible connection with ERISA, the Supreme Court explained that "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan. That is especially so if a law merely affects costs." *Id.* at 87. "In short, ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 88.

Rule 128 is a cost regulation statute. The Dispensing Fee Requirement states that "a health benefit plan . . . may be required to include a fair and reasonable cost to

dispense to pharmacies in its administration of drug benefits under its health benefit plan[.]" (R. 1-1 at 2.) The key word here is "may." The Commissioner has the authority to assess whether a dispensing fee is required at all; in other words, not every plan, including ERISA plans, may be subject to the fee after review of the requested data under the Reporting Requirement. (*See* R. 1-2 at 1 (describing how Commissioner will determine if health benefit plans are fair and reasonable "and if not, . . . whether health benefit plans should be required to pay an additional pharmacy dispensing cost to improve such reimbursement"). Though the plaintiffs suggest that this potential fee forces them into a particular scheme of coverage, and that "the possibility that a health plan might be forced to pay a higher dispensing fee also creates greater cost uncertainty," (R. 19 at 12–13), these arguments are unavailing. As the *Rutledge* Court pointed out, "'indirect economic influence' did not create an impermissible connection . . . [t]he law might 'affect a plan's shopping decisions, but it [did] not affect the fact that any plan will shop for the best deal it can get.'" 592 U.S. at 87 (quoting *Travelers*, 514 U.S. at 659–60). At bottom, "'cost uniformity was almost certainly not an object of pre-emption.'" *Id.* (quoting *Travelers*, 514 U.S. at 662).

The plaintiffs also argue that Rule 128 "dictates plan design in another manner[,]" by prohibiting ERISA plans' ability to require "their Arkansas participants pay a higher amount for their prescription drugs to offset the higher dispensing fees." (R. 19 at 13.) But the Rule does not say that. Rule 128 states that a health benefit plan "may not require a subscriber to pay for the dispensing cost outside of the amounts the health benefit plan has designated as the co-pay, co-insurance, and deductible." (R. 1-2 at 2–3.) As the defendants put it, the "provision merely requires plans to adhere to their own terms, and it does not prevent plans from increasing co-pays, co-insurance or deductibles to account for any increased dispensing fee they are required to pay." (R. 22 at 7.) Because the Court must consider what Rule 128 says and not what the plaintiffs allege it says, *Flannery*, 352 F.3d at 638, the plaintiffs have not stated a claim that the Dispensing Requirement is pre-empted by ERISA.

Date: September 2, 2025

JEREMY C. DANIEL
United States District Judge

7